FUSON et al. v. MILLS et al.

Court of Appeals of Kentucky.

May 16, 1952.

J. B. Campbell, Carlos B. Pope, Barbourville, Cleon K. Calvert, Pineville, for appellants.

H. H. Owens, Victor A. Jordan, Barbourville, Kirtley & Kirtley, Owensboro, for appellees.

MOREMEN, Justice.

The question for decision concerns the correct distribution of the estate of Matt Fuson, who died intestate.

Matt Fuson was a bastard. This record offers uncertainty, not for the commonplace reason that the identity of the father was in doubt, but because there was a difference of opinion among witnesses concerning who was his mother. One group believed that Emmaline Brooks was his mother, while another set of witnesses contended that Emmaline Maiden produced him. All agreed that Jim Fuson was his father.

Bradley Mills, administrator of the estate of Matt Fuson, filed suit in Knox Circuit Court by which he sought settlement of the estate and in which he set out in detail the fact that two sets of heirs were claiming the proceeds of the estate. One set of alleged heirs were relatives of Jim Fuson and claimed through him, and the other set were descendants of Emmaline Brooks and claimed through her. Calvin Brooks Jr., one of the latter group, had, theretofore, filed a suit in the same court against the administrator seeking settlement of the estate. The two suits were ordered consolidated.

A remarkable feature of this case exists in the fact that Emmaline Maiden, if alive, or her descendants, if she is dead, were not made parties. They were ignored completely. Although various demurrers and motions were filed which should have tested the sufficiency of the pleadings and determined the issues, the court took no action and, in his final judgment, it was recited that "judgment on the merits will dispose of all same (demurrers, etc.) except as herein may appear." The court held that Emmaline Brooks was the true mother, and it is from that judgment this appeal is prosecuted.

The establishment of the fact of motherhood fixes the lines of distribution of a bastard's estate, because subsection 1 of KRS 391.090 provides:

"The estate of a bastard shall descend and be distributed in the same manner as that of a person born in lawful wedlock, except that the inheritance shall go to the mother and her kindred and not to the father and his kindred."

The true controversy in this suit should have been between the heirs of Emmaline Brooks and the heirs of Emmaline Maiden. Nevertheless, the case was vigorously tried on the assumption that if it was shown that anyone other than Emmaline Brooks was the mother, the heirs of the father, Jim Fuson, were entitled to the estate of Matt Fuson.

If the proof introduced had left us with a doubt concerning whether Emmaline Maiden was the mother of Matt Fuson, it would be necessary to remand this case under Section 28 of the Civil Code of Practice and require that proper parties be joined. Aetna Life Ins. Co. v. Roper, 243 Ky. 811, 50 S.W.2d 8. But the proof is convincing that Emmaline Brooks was the mother and the establishment of that fact obviates the necessity of requiring other parties.

Twenty-seven witnesses testified at length as to circumstances which surrounded the birth of Matt Fuson. Much of the testimony was vague. Few dates were established. Some repeated only that which they had heard others say. The

picture of Emmaline Brooks emerges sharply from this record. We are convinced that she and her husband, Cal Brooks Sr., lived on Clear Creek in Knox County and that six or seven children were born to this union, two of whom survive, namely, Cal Brooks, Jr. and Mandy Rains. Sometime thereafter, Cal Sr. died and it was not long afterwards that her association with Jim Fuson began. Some witnesses testified that she married him. No proof other than reputation of marriage was introduced, but it was well established that Matt Fuson was the son of this union, regardless of whether the relationship was blessed with legitimacy.

When Matt was very young, Emmaline Brooks was committed to an insane asylum where she died. It is interesting to note in this connection that several of her children by Cal Brooks Sr. suffered from mental disturbances. One daughter died of insanity and another daughter called Daisy had mental disturbances. One witness testified that Mandy Rains, one of the parties of this suit, was not of sound mind. Cal Brooks, Jr., who testified, made statements which were irrational, and Wesley Rains testified that he, Cal Brooks, Jr., was hardly capable of giving evidence.

Matt Fuson also died insane and, while we do not hold as a matter of law that the presence of this taint indicates he was the son of Emmaline Brooks, it does not militate against the assertion that he was her son.

The witnesses introduced by appellant gave testimony which showed little more than that Emmaline Maiden who lived for a while with the Fusons had had several bastard children; that the opportunity was there for Jim Fuson to be the father of one of them, and one of them may have been Matt Fuson.

A tremendous amount of proof was introduced on the issue of who took care of young Matt after the death of his mother, and this testimony preponderated to the effect that Jim Fuson took care of him. We cannot attach great significance to this fact because Jim Fuson undeniably was the father and it seems logical that if he recognized the duty to care for the child by taking it to the homes of members of his family, he would do so regardless of who was the mother. The few witnesses who testified with any directness that Emmaline Maiden was the mother failed entirely to explain her disappearance soon after the event or to account for the disappearance of her other progeny.

The consideration of all the testimony leads us to believe that the trial court correctly found that Emmaline Brooks was the mother of Matt Fuson, and the judgment is, therefore, affirmed.